ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| MUNICIPIO AUTÓNOMO DE DORADO<br><br>RECURRENTE-INTERVENTOR<br><br><br>V.<br><br><br>OFICINA DE GERENCIA DE PERMISOS (OGPe); ELITE TOWERS, LLC; FRANCISCO J. RIVERA; ESAM A. HUSSEIN HASSAN<br><br>RECURRIDOS | KLRA202300138 | *REVISIÓN JUDICIAL* procedente del Departamento de Desarrollo Económico y Comercio, Oficina de Gerencia de Permisos<br><br>Número Caso: 2021-385341-PCOC-021928<br><br>SOBRE: Solicitud de Permiso de Construcción Facilidad de Telecomunicaciones |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Salgado Schwarz.

Salgado Schwarz, Carlos G., Juez Ponente

# **S E N T E N C I A**

En San Juan, Puerto Rico, a 28 de abril de 2023.

Comparece ante nos el Municipio Autónomo de Dorado (Municipio o Recurrente) y solicita que revoquemos una determinación emitida y notificada el 16 de febrero de 2023 por la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (DRA-OGPe). Mediante el referido dictamen, la DRA-OGPe declaró *No Ha Lugar* una *Solicitud de Revisión Administrativa* presentada por el Municipio, la cual buscaba dejar sin efecto el Permiso de Construcción Núm. 2021-385341-PCOC-021928 (Permiso de Construcción) otorgado a Elite Towers, LLC (Elite Towers o Recurrida) para la construcción de unas facilidades de telecomunicaciones.

Por los fundamentos que exponemos a continuación, *revocamos* la decisión recurrida.

Número Identificador

SEN2023_____

**-I-**

El 19 de octubre de 2022, el Municipio presentó una *Solicitud de Revisión Administrativa* ante la DRA-OGPe, reclamando la revocación del Permiso de Construcción otorgado por la agencia a favor de Elite Towers el 27 de septiembre de 2022 y notificado el 29 del mismo mes y año.[1] En su escrito, expresó que el proyecto propuesto incumplía con el Art. 5(a) de la Ley Núm. 89, conocida como la *Ley sobre la Construcción, Instalación y Ubicación de Torres de Telecomunicaciones de Puerto Rico*[2] y la Sección 9.11.2.2, inciso a, del Reglamento Núm. 9233 del 2 de diciembre de 2020, conocido como el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo y Uso de Terrenos* (Reglamento Conjunto 2020). Esto pues, a su entender, la torre de telecomunicación a construirse no guardaba la distancia requerida por ley (no menos de la altura, más un diez por ciento de distancia de la residencia más próxima). Además, expuso que la ubicación de la antena reduciría la capacidad de estacionamientos que actualmente tiene el predio objeto del Permiso de Construcción, lo que entendía violentaba las Secciones 8.5.1.1, 8.5.2.1 y 8.5.3.1 del Reglamento Conjunto 2020.

Así las cosas, la DRA-OGPe señaló una vista para evaluar el caso ante su consideración. Luego de escuchar a las partes que comparecieron a dicho procedimiento, y estudiar las constancias del expediente administrativo desarrollado, el ente revisor emitió una *Resolución de Revisión Administrativa*, en la cual consignó las siguientes determinaciones de hechos:

---

[1] Apéndice del Recurso, págs. 385-394.
[2] 27 LPRA sec. 323(a).

1. El 27 de enero de 2022, Elite Towers, LLC, por conducto del Ing. Francisco Rivera Torres, presentó ante la Oficina de Gerencia de Permisos (OGPe), una solicitud de permiso de construcción para unas facilidades de telecomunicaciones. La solicitud fue identificada con el número 2021-385341-PCOC-021928.

2. La propiedad objeto de solicitud está localizada en la Carretera 698 Km 1.0, Mameyal Lote 2 #115, en el Municipio de Dorado.

3. La propiedad ubica en un distrito de calificación Residencial Intermedio (R-I), según el Mapa de Calificación del Municipio de Dorado.

4. En el Memorial Explicativo que obra en el expediente del caso número 2021-385341 PCOC-021928, se indicó lo siguiente:

   "[…] *Descripción del Solar:*

   *El solar donde se propone la instalación de la estación de telecomunicaciones es un predio de 350 m.c. (3,767.37 p.c.) arrendado por Elite Towers LLC., y está ubicado en el Bo. Higuilar del pueblo de Dorado, P.R. El acceso principal hacia el área del proyecto es por la Carretera Núm. 698*

   *Descripción de las Instalaciones Propuestas:*

   *Esta estación de telecomunicaciones consiste de 4 elementos principales: una torre unipolar, 3 bases de hormigón para equipos, las facilidades de energía eléctrica y la verja.*

   *1. Torre Unipolar (Monopole):*

   *La torre de acero unipolar será construida a una altura de 90 pies. Esta torre no requiere de tensores. Como parte de su diseño estructural se consideraron las cargas de instalación de antenas para tres compañías, así como también los cables de comunicación que conectan a estas con los equipos de comunicación inalámbrica. Más aun, estará debidamente protegida por un sistema de pararrayos y disipadores de descargas electrostáticas. También estará provista de indicadores para la aviación (si lo requiere la Comisión Federal de Aviación, mejor conocida por sus siglas FAA) mediante una luz roja*

*intermitente que funciona en horas de la noche.*

*[…]*

*2. Bases de Hormigón:*

*Se construirán tres bases en hormigón para la instalación de los equipos de telecomunicaciones de uso exterior. Esto es con la intención de tener facilidades para que los servidores de sistemas de telecomunicación puedan instalar sus equipos en las facilidades propuestas. Como anteriormente se menciona en este memorial Elite Towers LLC., tiene la intención de facilitar infraestructura de alta calidad a la industria de las telecomunicaciones.*

*3. Facilidades de Energía Eléctrica*

*En el solar propuesto se propone instalar facilidades de energía eléctrica de tipo normal. La instalación de estas facilidades eléctricas será consultada con la Autoridad de Energía Eléctrica para su evaluación y conexión.*

*4. Verja*

*Se instalará una verja, en la periferia del lote arrendado, construida en acero galvanizado a una altura de 8 pies mínimo para propósitos de seguridad. Esta verja cubrirá básicamente el área de la torre, así como el área de las bases de los equipos de uso exterior.*

*El camino de acceso a las facilidades de telecomunicaciones ya está impactado con asfalto, se usará este mismo acceso para entrar al área arrendada.*

*[…]"*

5. El solar donde se propone el proyecto es un predio de de [sic.] 1,330.9401 metros cuadrados, según escritura. La parte Proponente-Concesionaria arrendó 350 metros cuadrados, en la azotea para la instalación de la plataforma para los equipos de telecomunicaciones y 10 metros cuadrados para: "*…para la construcción, operación y mantenimiento de las Facilidades de telecomunicación del ARRENDATARIO, junto con todas las servidumbres necesarias para acceso, egreso y utilidades…*", según surge del Contrato de Opción y Arrendamiento suscrito el 23 de enero de 2019, entre Esam A. Hussein Hassan (Arrendador) y Elite Towers, LLC. (Arrendatario).

6. En el expediente del caso número 2021-385341-PCOC-021928, obra un documento titulado *Radio altura y 10 por ciento y radio notificacion* [sic.] *colindante*. En el mismo, se identifica el radio de seguridad de altura más diez porciento [sic.] (10%), un total de 99 pies, y el radio de notificación de 100 metros. En el mismo se identifican dentro del radio de seguridad las siguientes propiedades:

    - Propiedad del dueño de la propiedad y arrendador, con número de catastro 019-098-191-17, y uso comercial, permiso único número 2022-421063-PU-127044

    - Propiedad con número de catastro 019-098-191-15, y uso comercial Centro Clínico del Norte, permiso único número 2022-461219-PU-179123

7. La escalera de la propiedad con número de catastro 019-098-190-20, propiedad del vecino opositor Wilfredo Navedo Rivera, está identificada dentro del radio de seguridad.

8. En el expediente del caso 2021-385341-PCOC-021928 obra Declaración Jurada sobre Co-ubicación, suscrita el 16 de noviembre de 2021, suscrita por Luis F. Ortiz Mercado en representación de Elite Towers LLC.

9. La propiedad ubica en una Zona X de inundabilidad, según la hoja núm. 72000C03101 según el Mapa Sobre Tasa de Seguros de Inundación, con vigencia de abril de 2018.

10. El Departamento de Recursos Naturales y Ambientales emitió sus comentarios y requerimientos sobre el proyecto, mediante comunicación del 1 de julio de 2021, en el caso 2021-385341-SRM-045273, e indicó lo siguiente: *"El Departamento de Recursos Naturales y Ambientales (DRNA) a través de su Oficial de Permiso asignado a la OGPe realizó una búsqueda en el Sistema de Información Geográfica (GIS) de la Junta de Planificación y no encontró en el área de la actividad propuesta hábitat crítico, elementos críticos ni área de Prioridad de Conservación. La División de Medioambiente no tiene objeción al proyecto propuesto. (…)"*.

11. El proyecto cuenta con una Recomendación Ambiental emitida el 1 de noviembre de 2021, caso número 2021-385341-REA-006524, y con una Determinación de Cumplimiento Ambiental

para Evaluación Ambiental emitida el 4 de febrero de 2022, caso número 2021-385341-DEA-006281.

12. En el expediente del caso obra la *Determination of No Hazard To Air Navigation*, emitida por el Federal 6 de abril de 2022.

13. El 18 de febrero de 2022, el Sr. Israel Class solicitó intervención en el caso objeto de revisión, caso número 2022-SIN-006762. Mediante Resolución sobre Solicitud sobre Solicitud de Intervención emitida el 18 de febrero de 2022, la OGPe declaró ha lugar la solicitud de intervención presentada.

14. El 24 de febrero de 2022, el Municipio Autónomo de Dorado solicitó intervención en el caso objeto de revisión, caso número 2022-SIN-006821. Mediante Resolución sobre Solicitud sobre Solicitud de Intervención emitida el 4 de marzo de 2022, la OGPe declaró ha lugar la solicitud de intervención presentada

15. El día 27 de septiembre de 2022, la OGPe expidió el permiso de construcción número 2021-385341-PCOC-021928, notificado el 29 de septiembre de 2022, para facilidad de telecomunicaciones.

[…]

**24. Durante el testimonio de la Sra. Martínez, la parte Recurrente solicitó presentar prueba sobre las recomendaciones de la Compañía de Turismo. Esta alegación se levanta por primera vez el día de la vista administrativa y no surge del escrito de revisión, por lo que la parte Proponente-Concesionaria objetó la línea del directo sobre esta controversia, porque no está preparado para argumentar la misma, dejándolo en un estado de indefensión. Argumentó el Proponente-Concesionario que el Recurrente tenía la oportunidad en su escrito de revisión, de señalar lo que el entendiera que fueron los errores cometidos por la agencia, y no esperar al día de la vista para traer prueba sorpresa. Indicó que solamente se levantó como errores fueron radio de caída y estacionamiento.**

**25. Por su parte, la OGPe indicó que la sección 11.1.2.9 del Reglamento Conjunto, inciso 2, en la notificación de esta División se indicaron los aspectos del caso que iban a ser revisado, y la notificación de vista señala los errores levantados por la**

**parte recurrente solamente al solicitar la revisión. Añadió que de esos alegados errores es que la agencia se preparó para la vista administrativa.**

26.    **El Examinador declaró ha lugar la objeción levantada por el Proponente-Concesionario y permitió consignar para récord el ofrecimiento de prueba de la parte Recurrente que indicó lo siguiente:**

*"La Sra. Martinez [sic.] hubiera declarado que la propiedad ubica en una zona de interés turístico y surge así de la hoja oficial de la Junta de Planificación, que esta [sic.] amarada [sic.] al sistema MIPR. Que es obvio que en el trámite de permiso que nos ocupa no obra ninguna recomendación de la Compañía de Turismo para que se entienda que la solicitud está completa bajo la Ley de Certificaciones.*

*Además, hizo un segundo ofrecimiento de prueba sobre todas las certificaciones del expediente del caso ninguna tienen el número del caso al que se refiere. Lo que implica es que están certificando un trámite incompleto. No se puede determinar con certeza si están certificando el caso objeto del permiso. en [sic.] específico a las certificaciones de los especialistas que son requeridas por el Reglamento Conjunto".* (Énfasis nuestro).[3]

A base de tales determinaciones fácticas anteriores, y de su interpretación del derecho aplicable, la DRA-OGPe determinó declarar *No Ha Lugar* la *Solicitud de Revisión Administrativa* instada por el Municipio. Al así hacerlo, el ente adjudicador razonó que:

> Según surge del plano con el radio de seguridad, dentro del mismo ubica la escalera de la residencia del Sr. Navedo. De la evidencia presentada surge que la misma no cuenta con permiso de construcción, y que no se encuentra en condiciones de ser utilizada de forma segura. Tomando en consideración la prueba presentada y la evidencia que obra en el expediente, concluimos que la torre de telecomunicaciones cumple con la distancia del radio de seguridad requerida en la Sección 9.11.2.1, antes citada.

---

[3] *Id.*, págs. 425-427, 429-430.

La parte Recurrente también alegó que erró la OGPe, debido a que la ubicación de la torre de telecomunicaciones reduciría la capacidad de estacionamientos de la clínica pediátrica localizada en el predio objeto del permiso de construcción.

Durante la vista de revisión, el perito de la parte Proponente-Concesionaria, Ing. Camilo Almeida Eurite, indicó que se evaluó el asunto de los estacionamientos y si el remanente es suficiente para el uso, y se concluyó que se proveen quince (15) estacionamientos funcionales, y se requieren once (11), cumpliendo con la reglamentación aplicable. No se presentó prueba para rebatir lo indicado por el Ing. Almeyda.

Examinada la prueba presentada en Sala y la obrante en el expediente, **concluimos que la presunción de corrección que permea a la determinación de la OGPe no fue rebatida por la parte Recurrente**. Nuestro más alto foro ha reiterado que en nuestra jurisdicción las determinaciones de las agencias administrativas gozan de una presunción de regularidad y corrección. Rivera Concepción v. Administración de Reglamentos y Permisos, 152 D.P.R. 116 (2000). Por lo tanto, la parte que impugna una determinación de una agencia administrativa le corresponde establecer que la misma se tomó en ausencia de evidencia sustancial. Asociación de Vecinos H. San Jorge v. U. Med. Corp., 150 D.P.R. 70,75 (2000); Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987). Cuando hablamos de sustancial hacemos referencia a *"aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión"*. Empresas Ferrer Inc. v. Administración De Reglamentos, 172 DP.R. 254; Hernández v. Centro Unido de Detallistas, 168 D.P.R. 592; Otero v. Toyota, 163 D.P.R. 716 (2005).

Las decisiones de los organismos administrativos merecen la mayor deferencia judicial, por contar con la experiencia y conocimientos altamente especializados sobre los asuntos a su cargo. De ahí que los tribunales deben limitarse a indagar sobre la razonabilidad de la decisión del foro administrativo sin sustituirle por su propio criterio, salvo que se infrinjan valores constitucionales fundamentales o se trata de actuaciones claramente arbitrarias. Rivera Concepción v. Administración de Reglamentos y Permisos, 152 D.P.R. 116 (2000) (Énfasis nuestro).[4]

---

[4] *Id.*, pág. 437.

Inconforme con la decisión de la agencia, el Municipio acude ante este foro apelativo. En su recurso de revisión judicial, el Recurrente expone que la DRA-OGPe cometió los siguientes errores:

PRIMER ERROR

ERRÓ LA OFICINA DE GERENCIA DE PERMISOS AL EMITIR EL PERMISO DE CONSTRUCCIÓN PARA UNA INSTALACIÓN DE TELECOMUNICACONES EN UN PREDIO UBICADO EN UNA ZONA DE INTERÉS TURÍSTICO (ZIT) SIN QUE SE OBTUVIERAN, PREVIO A DICHA AUTORIZACIÓN, LAS RECOMENDACIONES DE LA COMPAÑÍA DE TURÍSMO, VIOLANDO ASÍ LA LEY 374-1949, SEGÚN ENMENDADA.

SEGUNDO ERROR

ERRÓ LA DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OGPE AL DECLARAR NO HA LUGAR LA SOLICITUD DE REVISIÓN ADMINISTRATIVA PRESENTADA POR EL RECURRENTE, A PESAR DE HABER ENCONTRADO PROBADO QUE PARTE DE LA ESTRUCTURA DE LA RESIDENCIA DEL VECINO OPOSITOR WILFREDO NAVEDO RIVERA SE ENCUENTRA DENTRO DEL RADIO DE SEGURIDAD DE LA FACILIDAD DE TELECOMUNICACIONES DE LA RECURRIDA "ELITE" Y QUE, POR LO TANTO, SE VIOLÓ EL ARTÍCULO 5, INCISO A DE LA LEY 89-2000, SEGÚN ENMENDADA.

TERCER ERROR

ERRÓ LA OGPE AL APROBAR EL PERMISO DE CONSTRUCCIÓN DE LA INSTALACIÓN DE TELECOMUNCIACIONES A PESAR DE NO OBRAR EN EL EXPEDIENTE EL ENDOSO DE LA JUNTA REGLAMENTADORA DE TELECOMUNICACIONES REQUERIDO EN LA LEY 89-2000 Y EL REGLAMENTO CONJUNTO, CAEN CASO DE VARIACIONES (INCLUMPLIMIENTO DEL PROYECTO CON ALGUNA DISPOSICIÓN DE LA LEY 89-2000)

CUARTO ERROR

ERRÓ LA OGPE AL EMITIR EL PERMISO DE CONSTRUCCIÓN IMPUGNADO, Y ERRÓ LA DIVISIÓN DE REVISIONES ADMINISTRATIVAS AL NO REVOCARLO, A PESAR DE QUE EL PROYECTO DESCANSA EN UNA CERTIFICACIÓN EMITIDA EN VIOLACIÓN A LA LEY 135-1967

El 17 de abril de 2023, la Oficina de Gerencia de Permisos compareció y presentó su *Oposición a Recurso de Revisión*.

Por su parte, el 28 de abril de 2023, Elite Towers presentó su correspondiente *Oposición a Recurso de Revisión Judicial*.

Contando con la comparecencia de todas las partes, procedemos a resolver.

-III-

A. **Revisión Judicial de Decisiones Administrativas**

En nuestro ordenamiento, la revisión judicial de decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurar que estas desempeñen sus funciones conforme a la ley.[5] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados y son compatibles con la política pública que las origina.[6] Por lo general, el ejercicio de revisión judicial de una decisión administrativa suele ceñirse a tres áreas: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial; y (3) la revisión completa y absoluta de las conclusiones de derecho.[7]

Ahora bien, dentro de este marco, los tribunales apelativos deben concederle gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado que estas tienen en los asuntos que se les han sido encomendados.[8] De esta manera, estas determinaciones son amparadas por una presunción de legalidad y corrección, la cual los

---

[5] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008).
[6] *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018).
[7] *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).
[8] *Rolón Martínez v. Caldero López*, *supra*, pág. 35; *Asoc. Fcias. v. Caribe Specialty et al. II.*, *supra*, pág. 940.

tribunales deben respetar mientras la parte que las impugna no presente evidencia suficiente para derrotarlas.[9] A la luz de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[10]

Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones, tales como: (1) cuando la decisión no esté basada en evidencia sustancial; (2) **cuando la agencia haya errado en la aplicación de la ley**; (3) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[11]

Entretanto, la Ley Núm. 38 de 30 de junio de 2017, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (Ley Núm. 38)[12] recoge el alcance de la revisión judicial en su Sección 4.5, al establecer que:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.[13]

Como es de notar, tanto la Ley Núm. 38 como la jurisprudencia sostienen que el estándar para evaluar

---

[9] *Rolón Martínez v. Supte. Policía*, *supra*, pág. 35, citando a *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).
[10] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 892.
[11] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPE*, 172 DPR 254, 264 (2007).
[12] 3 LPRA secs. 9603-9713.
[13] 3 LPRA sec. 9675.

las determinaciones de hechos es uno de evidencia sustancial. Así lo ha reiterado nuestro Tribunal Supremo al explicar que los tribunales, aplicando el criterio de razonabilidad y deferencia, no alterarán las determinaciones de hechos de las agencias, siempre que surja del expediente evidencia sustancial que las sustente.[14] En este contexto, evidencia sustancial es aquella prueba relevante que "una mente razonable podría aceptar como adecuada para sostener una conclusión".[15]

Similarmente, nuestro Tribunal Supremo ha reiterado que estas determinaciones deben respetarse mientras quien las impugne no produzca evidencia suficiente para derrotarlas.[16] Es decir, al impugnarse, la parte tiene el deber insoslayable de presentar ante el foro judicial la evidencia necesaria que permita descartar la referida presunción de corrección.[17] Esto implica que se debe demostrar que existe otra prueba, que obre en el expediente, y que reduzca o menoscabe el valor probatorio de la evidencia impugnada hasta el punto que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba ante su consideración.[18] Todavía más, lo anterior significa también que, ante los tribunales, el peso de la prueba descansa sobre la parte que impugna el dictamen.[19]

Por otra parte, conforme lo dispone la propia sección citada de la Ley Núm. 38 y la jurisprudencia, las conclusiones de derecho son revisables en todos sus

---

[14] *Asoc. Fcias. v. Caribe Specialty et al. II*, *supra*, pág. 940.
[15] *Capó Cruz v. Junta de Planificación*, 204 DPR 581, 591 (2020), citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[16] *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006).
[17] *Id.*
[18] *Id.*, citando a *Otero v. Toyota*, 163 DPR 716, 728 (2005).
[19] *Id.*

aspectos.[20] Empero, ello no significa que se podrá descartar libremente las conclusiones e interpretaciones de la agencia para sustituirla por el criterio del tribunal.[21] En ese entonces, el tribunal está llamado a aplicar los criterios anteriores de intervención, especialmente en aquellas situaciones en que no encuentre una base racional que fundamente la actuación administrativa.[22] En virtud de este análisis, cabe recordar que los tribunales solo deben intervenir en las decisiones administrativas cuando concluyan que se ha actuado arbitraria, ilegal o irrazonablemente.[23]

**B. Ley de Zonas Históricas, Antiguas o de Interés Turístico**

La Ley Núm. 374 de 14 de mayo de 1949, conocida como la *Ley de Zonas Históricas, Antiguas o de Interés Turístico* (Ley Núm. 374) tiene como propósito el "preservar los valores históricos de Puerto Rico y desarrollar el turismo mediante la conservación y protección de especiales lugares y estructuras, y mediante la planificación armoniosa de la construcción de nuevas estructuras".[24]

Cónsono con lo anterior, el Art. 1 de la Ley Núm. 374 dispone, en cuanto a la concesión de permisos de construcción en este tipo de zonas, que:

> […] **[T]oda solicitud de permiso de construcción, permiso de uso, o cualquier otra solicitud de permiso que se radique ante la Oficina de Gerencia de Permisos** y los Municipios Autónomos con Jerarquía de la I a la V **para realizarse** dentro de los límites de una zona antigua o histórica o **dentro de los límites de una zona de interés turístico ha de ser previamente realizada y autorizada** en cuanto a sus detalles, rasgos arquitectónicos y

---

[20] *Torres Rivera v. Policía de PR*, *supra*, pág. 627.
[21] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 894.
[22] *Id.*, pág. 896.
[23] *Rolón Martínez v. Caldero López*, *supra*, pág. 36.
[24] 23 LPRA sec. 161.

apropiada relación con el carácter de tal zona, **en la forma más adelante dispuesta y conforme a las demás leyes aplicables.**

[…]

**En el caso de una zona de interés turístico, ninguna franquicia, permiso, autorización o licencia para obras, construcciones, instalaciones, servicios, uso o actividades dentro de dicha zona podrá ser concedido por la Oficina de Gerencia de Permisos** y los Municipios Autónomos con Jerarquía de la I a la V, según se haya determinado por ley <u>**sin la previa recomendación escrita de la Compañía de Turismo**</u>, según se dispone en la Ley 161-2009. (Énfasis nuestro).[25]

Por otro lado, con respecto al procedimiento para la aprobación de permisos en una de las zonas previamente mencionadas, el Art. 4 de la Ley Núm. 374 establece, de manera específica, que:

**Todo proyecto, plano, elevación y toda información con cada solicitud de permiso de construcción, de uso, u otro, a realizarse** dentro de una zona antigua o histórica o **dentro de una zona de interés turístico, serán aprobados o autorizados por la Oficina de Gerencia de Permisos** y los Municipios Autónomos con Jerarquía de la I a la V, <u>**previa recomendación escrita de la Compañía de Turismo de Puerto Rico en el caso de las zonas de interés turístico**</u>, y del Instituto de Cultura Puertorriqueña en el caso de las zonas antiguas o históricas. […] (Énfasis y subrayado nuestro).[26]

De igual forma, el Art. 6 del citado estatuto añade que:

No podrá implantarse sin la previa aprobación de la Junta de Planificación o de la Oficina de Gerencia de Permisos, según corresponda, acción alguna en una zona antigua o histórica o en una zona de interés turístico que modifique el tránsito o altere los edificios, estructuras, pertenencias, lugares, plazas, parques o áreas de la zona por parte de personas particulares o agencias gubernamentales, incluyendo los municipios. <u>**La agencia pertinente no podrá aprobar ninguna de las acciones señaladas sin contar con las recomendaciones por**</u>

---

[25] *Id.*
[26] 23 LPRA sec. 164.

**escrito** del Instituto de Cultura Puertorriqueña, en el caso de una zona antigua o histórica y **de la Compañía de Turismo, en el caso de una zona de interés turístico**. […] (Énfasis y subrayado nuestro).[27]

Por último, cabe destacar que el Art. 7 de la Ley Núm. 374 dispone para la imposición de ciertas penalidades a toda persona que violente las disposiciones contempladas en esta ley. Particularmente, la referida disposición establece que:

> **Toda persona que infrinja esta Ley** o cualquier reglamento relacionado con las mismas y promulgado para implementarlas, **se le impondrá una multa mínima de quinientos dólares ($500) y máxima de cinco mil dólares ($5,000) por evento o infracción**.
>
> **El tribunal, además, especificará en la sentencia un término, que no será mayor de tres (3) años, durante el cual no se podrán expedir permisos de construcción o uso en propiedades donde se hayan infringido esta Ley o cualquier reglamento relacionado**. El tribunal notificará dicha sentencia al Registro de la Propiedad correspondiente para su anotación en el mismo. (Énfasis y subrayado nuestro).[28]

### -IV-

En su recurso de revisión judicial, el Municipio argumentó, en primer lugar, que la DRA-OGPe erró al confirmar el Permiso de Construcción, debido a que, presuntamente, el mismo fue otorgado sin haberse obtenido las recomendaciones de la Compañía de Turismo conforme lo requiere la Ley Núm. 374. Basado en ello, solicita que dejemos sin efecto la determinación recurrida y declaremos nulo el permiso impugnado. Luego de estudiar el expediente ante nuestra consideración y el derecho aplicable al mismo, entendemos que le asiste la razón.

---

[27] 23 LPRA sec. 165a.
[28] 23 LPRA sec. 166.

Surge de autos que el proyecto objeto del Permiso de Construcción ubica en una zona clasificada como de interés turístico en el Municipio de Dorado.[29] Conforme observamos previamente, para este tipo de construcción la Ley Núm. 374 requiere, de manera expresa, que la Compañía de Turismo emita sus recomendaciones por escrito previo a que la obra propuesta sea aprobada o autorizada por la Oficina de Gerencia de Permisos. Debido a lo anterior, nos es forzoso concluir que, en este caso, la agencia incidió al conceder el Permiso de Construcción en cuestión, debido a que falló en requerir que se diera cumplimiento al requisito estatutario previamente expuesto. Lo anterior, aun cuando en la vista celebrada por la DRA-OGPe, el Municipio trajo a la atención de esta la ausencia en el expediente de los aludidos comentarios. La denegatoria de la DRA-OGPe de atender dicho planteamiento basado en que el Municipio no lo incluyó en su *Solicitud de Revisión Administrativa* fue incorrecta, puesto que, como es conocido, todo acto llevado a cabo en contra de la ley es nulo y, por tanto, puede ser cuestionado por las partes en cualquier momento.[30]

Habida cuenta del resultado al que arribamos, nos parece innecesario atender los restantes señalamientos de error expuestos por el Municipio en su recurso de revisión. Sin embargo, un estudio de los fundamentos utilizados por la DRA-OGPe al emitir su determinación nos mueve a recordarle a dicha entidad que la doctrina de deferencia y corrección de las decisiones que emiten las agencias es de aplicación a los foros judiciales y

---

[29] Apéndice del Recurso, pág. 439.
[30] *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 504 (2011).

no a la revisión intra-agencial que llevan a cabo estas últimas. Es decir, dicho estándar rige a este Tribunal en su ejercicio de examinar la determinación emitida por un foro administrativo y no al ente en su proceso de revisión interno. Por lo cual, el uso de esta doctrina por la DRA-OGPe al revisar el Permiso de Construcción en cuestión fue un proceder errado en derecho y, por tanto, debe ser evitado por esta al adjudicar controversias futuras.

Por último, el Art. 7 de la Ley Núm. 374 es claro y preciso en requerir la imposición de una penalidad a toda persona que violente las disposiciones del referido estatuto. Así pues, habiéndose tramitado en este caso un permiso de construcción sin contar con los comentarios de la Compañía de Turismo que requiere expresamente la ley especial antes citada, entendemos prudente que la Recurrida satisfaga el pago de **quinientos ($500) dólares** en concepto de multa. De igual forma, establecemos un término de **noventa (90) días** dentro del cual no se podrán conceder permisos de construcción para el predio objeto de este pleito.

-V-

Por todo lo anteriormente expuesto, *revocamos* el dictamen recurrido y dejamos sin efecto el Permiso de Construcción en cuestión. De igual forma, por haberse violentado las disposiciones de la Ley Núm. 374, ordenamos a la Recurrida a satisfacer el pago de **quinientos ($500) dólares** en concepto de multa y establecemos un término de **noventa (90) días** dentro del cual no se podrán conceder permisos de construcción para el predio objeto de este pleito.

Notifíquese a las partes y a la Sección del Registro de la Propiedad correspondiente.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


*Lcda. Lilia M. Oquendo Solís*
*Secretaria del Tribunal de Apelaciones*